My name is Charles Dalziel. I represent the appellate Scott Rigsby and the Scott Rigsby Foundation in this case, and the appeal here is about the order of the district court dismissing the case on a 12B6 motion, and we believe that the court's decision was erroneous for many reasons. And the way I guess that the best way to do this is actually to address the court's order dismissing the case, and we have to consider first that I did a tremendous amount of research about the multiple GoDaddy entities before I filed the case on Edgar and otherwise through SEC reports and filings. And what was determined was that the actual entity that issues the web names that people use on their GoDaddy sold websites is called GoDaddy Operating Company, LLC. There was a contract that was like a click-wrap agreement that one would engage in with not that entity but another entity, that entity being GoDaddy.com, LLC, on the Internet. And supposedly when you utilized the GoDaddy web hosting services and registered your name with them, that was the entity that you were contracting with. But that was in 2011. My client actually got his website in 2007. And so the actual entity that he got the website from originally was not a party to the case. It would have to have been cited to the discovery because what they did was they did a stock offering in 2011 making GoDaddy, Inc. the holding company that went on the public exchanges. And so what we did in this case was we sued. And the reason that we sued is that my client, when he was about 20 years old, he had both of his legs amputated in an accident. And like many of the other people who were in that kind of situation, what they do is they do a lot of extreme working out and they get this tremendous upper body and he happened to get prosthetic legs underneath him. So he was the first person to ever do the Iron Man triathlon on prosthetic legs. And so what that enabled him to do, particularly down south in the Atlanta, Georgia area, is become a public speaker who would be telling an inspiring story about the fact that he had sort of beaten the injuries that he'd received. And that he had created a life for himself that had religious implications. So a lot of the speaking that he was doing was to religious organizations. And in order to enhance his speaking and also his personal income, frankly, he started this foundation so that what they did was they collected money for veterans and others who might need assistance in getting prosthetic limbs. I have a couple of questions because he obviously has a really remarkable background and some success in telling his story. And obviously he's concerned now about his trademark and about this other company that may be using it, correct? I need to interrupt you very quickly. That's not correct. Okay. Okay, that's actually the same error that Judge Laverty made. Okay. Under the Lanham Act, I don't have to have a trademark in order to be able to sue them. He doesn't have a trademark. Well, I'm not going to argue with you on that. I think he has a common law trademark. Okay, good. I wouldn't go so far as to disclaim his rights if I were you. Okay. But he has recognition. We'll call it that if you want to call it a trademark. But he has a common law trademark at a minimum. But what's at issue here is what is GoDaddy's status as a domain name registrar. And it seems to me that we've already decided in earlier cases, including the Lockheed case, that being a domain name registrar is not an in-use application in commerce as required under the Lanham Act. Do you have any case that contradicts Lockheed or would put GoDaddy in some other status? Well, the first thing that you have to remember about that is that we're not clear on which entity we're talking about. Forget the entity. We'll take them off. What your complaint is is that your client failed to renew and pay his money, and then the domain name was sold. So my question is, do you have any cases that would suggest that a domain name registrar qualifies for use in commerce under the Lanham Act? Well, we're not really arguing that. What we're arguing is they're not just a mere domain registrar. Well, answer my question first, and then we'll find out what else you think they are. Okay. I don't have a specific case in mind on that point. Okay. So you think that GoDaddy is more than a domain name registrar? Absolutely. Okay. And what did they do? What did they do? What they do, I mean, they have a CLIPRAC contract. You can read every CLIPRAC contract that comes up. It comes up about every four or five months. It changes over and over again. Interestingly, in this situation. But what did they do? I want to focus on that. What they do is they say that they own the content, and they can do whatever they want to do with it. They can change it. They can refuse to allow it to be published. They can do anything they want to with it. So once we hand the ball to them, they have the ball in their hands, and they make the decision about whether it's going to be posted or not. They have the decision about what form it's going to be posted in. They announced and grabbed that power. Okay. In what law is that a violation of? Well, the whole issue is are they a mere content provider or, I should say, give me one second. I'm sorry. They are not just the protected sort of third party that just lets or provides a facility for people to publish content. They actually are the actual provider of the content under their own contract. Well, you know they're not, factually. What you seem to be arguing, not that they put up whatever is now available on the website ScottRigbyFoundation.com or whichever. You're arguing that they had authority to yank it back somehow and didn't exercise that authority. We're trying to focus on what exactly you allege. Is that what your allegation is, or do you allege something different from that? Well, our allegation is that they had the power. So our allegation really is that every day. I think you're answering my question yes, but let's be clear about this. Is your argument that they did not exercise power that you allege they had? That's part of the argument, but that's not the whole argument. What's the rest of it? The rest of it is that every day when they wake up, they're the ones who decide what is on the ScottRigbyFoundation.org website. Nobody else is deciding. Well, you know that's not true. That's not true. Do you have any evidence of that? Once you get the domain name, what allegation is in your complaint that shows that they actually put content on the website? The contract is what – I mean, if you ask me in a motion to dismiss argument, what evidence do I have? I don't know yet because I haven't taken the discovery. But there's not even an allegation, really, of any in use. Yeah, I made the allegation, just as I said it to Your Honor, that they're the ones every day that choose what's on that website. And when I get into discovery, I'm going to develop in much more detail how that decision is made on an ongoing basis. But do you allege that they actually created the content that's available on the website? So you're answering my prior question that your allegation is simply that they didn't exercise power to take it down or alter it or do anything else with it. That's part of it, but they – You keep saying that's a part and there's something more, but I haven't found what the something more is. The something more is if you read the language that they put – Don't tell me about reading the language. What did they do separate from not exercising the power you allege they have? I would say nothing. Well, that's the answer I've been searching for. So we're limited to the question of whether they, by failing to exercise the power you allege they had under the contract, became more than a domain name registrar, which sounds to me like a legal question. What discovery would you take that could speak to that question? Well, the first thing that you would discover is who it was that overtook the site, how the information that they put on the site in substitution for Mr. Rigsby's information, how it got there. We know that they sold – that the mark – I keep saying the mark, but I mean the domain name. That the domain name was transferred, correct? Right. And then later – And you do know that, right? Yes. And have you made any effort to sue the current domain name holder? No, because if we do that under the procedure that's applicable under the law, GoDaddy and all its related entities are immune. So we don't want to do that. We want to be able to sue them. I don't know how that would make them immune, but I don't know how that makes GoDaddy – You've only sued GoDaddy, who really is at base a domain name registrar, and that registrar sold or transferred the domain name to this new entity. So I'm trying to understand the legal theory. Maybe you can – The legal – you have to read the case of Fair Housing Council versus San Fernando Valley versus roommates. Right. And it specifically states in there that it's a factual question as to whether, in that particular situation, the roommates.com crossed the line and became actually the publisher of the content that could be held liable. And so we believe, and the reason that we appealed is that we believe that there is a plausible allegation in the complaint that GoDaddy is more than that that we want to do discovery about. I don't have the evidence specifically because my case was dismissed on motion to dismiss. All right. Well, now you've kind of moved from the Lanham Act and the InCommerce requirement to Section 230, but maybe you want to reserve your time. I'll reserve my time. Thank you. We'll hear from GoDaddy. Mr. O'Connor. Thank you, Your Honor. Thank you, Your Honor. Good morning. May it please the Court, Harper Selden, on behalf of Defendants Appellees, the GoDaddy entities. This court ended a discussion with my colleague about what remedies are available when you have this kind of factual scenario, which is you have a customer who used to be the domain name registrant. Their registration lapses, and then that domain name becomes available on a first-come, first-served basis to anyone else who wants to register it. That put the plaintiffs in the same situation as anyone who doesn't have the registration for a domain name that they want. They have some options. They can file a UDRP proceeding, which is an administrative proceeding required by ICANN, in which they can essentially sue the registrant and say, I have a claim or I have a priority, this domain name should be mine. They can sue the registrant themselves, saying I should be the registrant, not you. They can even sue the domain name itself in red and assert their claims that way. The one thing that under the Lanham Act and the state law claims pled here that they can't do is sue the registrar. This complaint pleads plainly that one of the GoDaddy, one of the entities sued is the registrar. As to the other three, they have some kind of corporate relation. I think, as Your Honors may have been alluding to earlier, it doesn't matter which of those entities is the registrar and which is the corporate relation. This is not a joint tortfeasor case where there's four folks and one of them threw the rock and you need discovery to figure out who it is. In this case, whichever one is the registrar has an immunity under the Lanham Act under a cyber-squatting claim, unless you can show bad faith intent to profit from the market itself, or under the remainder of the Lanham Act, you have to show that the domain name registrar used it in commerce. There's ample case law that a registrar does not use a domain name in commerce when it merely accepts the registration. That's a technical function so that when you want to navigate to a website, you don't need to remember the IP address. You can just remember the domain name, and that's how you get there. That's the only allegations, that one of them is the registrar and the rest are corporate relations. That's not enough under the Lanham Act. It's also not enough for any of the state law claims that are fled because of the Communications Decency Act. You read the CDA 230C1 and E3 together, what it boils down to is if you're an interactive computer service provider, which includes registrars like GoDaddy, you cannot be held liable under state or local law as though you are the publisher or speaker of content provided by a third party. It's easiest to conceptualize in the defamation context, but it applies broadly to state law claims. To the extent that the complaint really complains about two separate things. One is plaintiffs believe that they should have the registration for this domain name, and they don't. Second, what the current registrant is pointing to, which is a website about online gambling, that takes you into the question of the CDA. Since there's no allegation that GoDaddy or any of the defendants created that content, there could be no liability for those state law claims on that basis. I think that the response that I heard to that argument is that the breadth of the domain registration contract is such that it gives the registrar power to reject and possibly even put information on the website. Now whether that's true or not, that seems to be what I think he's arguing. Could you respond to that? Yes. So I think what plaintiffs have focused on is the user content policy, which deals with a separate set of circumstances and content that are not at issue here. The only service at issue here is domain name registration. The only allegation is the core of that activity. The user content policy is directed to a different issue, which is that GoDaddy on its own website, not on websites that result from domain names it has registered, not on websites it might host in its capacity as a hosting provider, but when GoDaddy on its website has things like message boards or forum posts or the ability to leave reviews, the user content policy says if you leave a stellar review of a GoDaddy product on a forum, GoDaddy has a license to use that comment. They can publish it elsewhere to say look how great our product is. They can screenshot it and tweet it. That doesn't, however, change the relationship that GoDaddy has as a registrar to its registrants or even when it acts as a website host, which is not at issue here to the websites because the user content policy says at the end, you still control your website content. We know that the user content policy is not creating the kind of relationship or development of content that plaintiffs are alluding to because what the user content policy also says is that any user also has a license to use comments that are placed how they want. So if someone has a particularly pithy comment on a message board on GoDaddy's website and some other user sees it and wants to publish it somewhere else, they can do that. That's what the user content policy is talking about. So the terms of service here, the universal terms of service cover more than just domain name registration because it's the universal terms of service. It covers all GoDaddy products and services. But in this case, the only service that we are concerned with based on these allegations is the registration, which is much narrower, which is a technical function to link IP addresses to content. So in that respect, the user content policy is not in play here and it doesn't change the legal relationship of a registrar to the domain name or the registrant. So let me ask you something that's really kind of outside the record, if you don't mind, which is how are these—this comes up, I would guess, a fair amount. How are these disputes usually resolved? So there are several mechanisms for this kind of dispute and one of them is a UDRP proceeding. That's the Uniform Domain Name Dispute Residential Policy. Another is that a plaintiff will sue the registrant directly or if there's some concern about the ability to identify or locate the registrant, at least under the Lanham Act, there's capacity to sue a domain name in REM. I heard your prior answer, but I gather that in many cases they just have to repurchase the domain name from the new registrant or record a new domain like the real foundation or something like that, right? Yes. Yes, Your Honor, that's exactly right. There is a market for the sale of domain names outside of the registration context. There's also—the good and the bad of the domain name registration system is that it's first come, first served. Right. There's a cyber squatting law if that were implicated. Right. There is a cyber squatting law. It's not implicated here under the ACPA and cyber squatting places. It's clear that merely from the registrant's side, not from the go-daddy side, but the registrant's side, just because you register a domain name, that alone does not create cyber squatting liability. You have to have some kind of bad faith because you're registering because you want to ransom it back or because you want to confuse people about the source of goods. So on the registrar's side, which is the go-daddy side, again, there's no liability merely from accepting the registration. That's an automated process. Go-daddy doesn't pick the domain names. Those are picked by the people who are making the registration. You have to show a bad faith intent to profit from the mark itself, and there's law in the circuit and elsewhere that the mere fact that go-daddy profits as a company from its registration activities, that's not the profit they're talking about. They're talking about a specific desire, a bad faith intent to profit from the mark, and we don't have that here. There's no allegation of bad faith. There's no allegation of intent to profit from the mark. So as vis-a-vis go-daddy, the cyber squatting claims, they don't match here because of what the allegations are that go-daddy is acting as a registrar and the lack of factual allegations about that kind of bad faith intent to profit, and I think we've already discussed with my colleague how use in commerce works, and that's the same thing here because there's the anti-cyber squatting Consumer Protection Act, which covers cyber squatting claims, but then there's the rest of the Lanham Act, and under that it's similar in that a domain name registrar does not use in commerce the domain name that it accepts a registration for, and I believe under that section of the Lanham Act you have to show bad faith or reckless disregard vis-a-vis a registrar. Again, we don't see those allegations in the complaint. Is there an allegation that the go-daddy in some way breached the original contract by failing to give follow-up notice or further confirmation of intent to abandon the domain name? Are there any allegations to that effect? No, Your Honor. We don't see that allegation, Your Honor. The allegation that we see is in explaining why they did not renew the domain name registration, they say that they didn't receive a bill, that there was a glitch, without even getting into the parts of the Terms of Service that talk about how it's the registrant's responsibility to keep their payment information current. We don't even have to get there because the plaintiff hasn't actually made any of those claims. There's no breach of contract claim here. There's a request for a declaratory judgment that certain parts of the Terms of Service are unconscionable and for declaratory judgment that the plaintiff should be the registrar, but there's actually no breach of contract claim, and we know that that was a strategic decision because plaintiffs said as much in their reply. They talked about, and also talked here today, about not wanting to bring claims essentially sounding in contract because they were trying to avoid provisions of the Terms of Service related to the limitation of liability. The court doesn't even need to get there, and the district court didn't need to get there because plaintiffs are the master of their complaint. You know, the facts of this case have been what they are and settled for some time. Plaintiffs across from the original to the Third Amendment complaint have not elected to pursue any claim in that basis, and so at this point the plaintiffs are left with the Third Amendment complaint that they submitted to the court after the court at oral argument told them that the Second Amendment complaint contained, did not state any claims, and the court had some serious concerns and was going to dismiss absent, remediating that in the Third Amendment complaint. So what the plaintiffs could have pled as to these, and I guess the other point is we're left with the claims that the plaintiffs actually made, and what they made were Lanham Act claims and then claims for invasion of privacy, trade libel, that kind of thing. An allegation about the circumstances under which they didn't renew their registration, that is not a factual allegation that would support an element of any of those claims. Unless the court has any further questions, I would yield my time and respect the request that this court affirm the district court's decision dismissing the Third Amendment complaint with prejudice. Thank you. Thank you, counsel. We'll hear a rebuttal. Very briefly, we've seen very clearly there that Judge Liberty made. He went far beyond the allegations of the complaint to try to find various immunities and all sorts of other things that I didn't plead into. We're talking about the evidence of a contract with the four defendants, none of which actually made the original domain name registration agreement with my client. That was made in 2008. None of these entities even existed. And so we had day after day after day after day from 2008 these other entities doing what they did. And under the allegations of the complaint, there's no way that the case particularly could be deemed implausible. In fact, Judge Liberty doesn't even try to say that what I said was implausible. He was completely wrong about the fact that I agreed that GoDaddy was a domain name registrar. In fact, he actually cited a case that dealt with an entity that didn't even exist as far as the four entities that I alleged. And none of these... What exactly did you allege or do you allege today that makes the GoDaddy entities anything other than a domain name registrar? You keep telling us that they're not, but you haven't told us what else they did. And when we pressed you before, you acknowledged you had no allegation other than they failed to exercise power you alleged they had. What do you allege they did other than serve as a domain name registrar? From the time that the hijacking occurred, they allowed the other person in whatever far-off country they are to put new content on the site, and then they chose not to take it down even though they had the power to do so. Do you think that's doing something other than serving as a domain name registrar? I absolutely do. Do you have any authority that supports that proposition? Because what you just described is the function of a domain name registrar. In the Roombates case, what the Roombates people did was, the question is, are they an Internet content provider? And they are an Internet content provider because the buck stops with them as to whether or not the information is on the website. And let me just be clear. And when you say on the website, you mean on the GoDaddy website? No, I'm talking about on the Scott. The whole case is about the content of the Scott. Don't get mad at me. I'm trying to make sure I understand your argument. So it's not that it's on the GoDaddy website, but your view is they're letting the new Scott Riggs be put in appropriate content on the site. Their contract says that they control it, yes. And their contract now in this situation is like 13 days after we had the argument in Phoenix, they changed the contract so that the presumption now is, if you're in this situation that my guy was in, that they'll automatically renew it. So they had the power to do that a long time ago. And the only reason they don't want to do it in my case is because they're going to have monetary liability about it. That's the point. So I very much appreciate the opportunity to be here. Thank you. Thank you, counsel. Thank you both for your arguments today. The case just argued will be submitted for decision.
judges: THOMAS, McKEOWN, CLIFTON